May it please the Court, Theodore H. Frank for the appellants, and with the Court's permission, I'd like to reserve six minutes for rebuttal. We identify a number of reversible errors in our briefing. I'm happy to discuss any of those here, but if the Court doesn't have questions, I'd like to focus on going a bit further and holding that the settlement is unfair, per se, as a matter of law. Before you get there, let me just be sure I understand your perspective. If you are correct that the judge, Judge Fogle, ultimately did not value the value of the settlement in the class based on the coupon redemption, and if we agreed with that, does that mean we have to turn the whole settlement over? Can we fix part of it, send it back for a limited review? What do we do? On that particular question, if that were the only question in which you found in our favor, that would be fixed by remanding for a new Rule 23H finding. If you want to talk about that for a minute, I don't understand your argument on that, because as I understand it, this was not a – this was a – the statute does not say that you always have to use the redemption amount, no matter how you're figuring the fees. It says if you – as I understand it, if you're figuring the fees on a common fund basis, then you have to use the redemption amount. So that's my first problem, because that wasn't what was done here. It was done as a load store. Is that not right? That's not right. The statute says if you base the settlement on the amount of coupons, you have to use the redemption rate. It didn't base the fees on the amount of coupons. I would disagree that that – again, at pages 30 and 31 in the record, I think that's precisely what the judge did. The judge did, as I understand it, was to look at the load store to say, I'm going to – as a cross-check, as many of our cases say, I'm going to just look at the – how that measures up to the value of the settlement. And then he said, oh, I'm going to knock down load store some more. But he never – nobody ever presented it as based on the redemption. The judge said the combination of the coupons and the injunctive relief was worth 1.5 million. As a cross-check on load store fees. That's one way to interpret it. But if then the judge did that, then the judge runs into problems under Bluetooth and under Powers v. Ishin. Because what the judge did, as Bluetooth says, load store is not a floor, it's a ceiling, and you need to cross-check it to make sure that it's proportionate to the class receipt. You can't do that. And the actual amount is a lot less than the actual load store. Correct. But the actual amount is substantially greater than what the class receipt. And here's my second question about that. What happened here, I mean, the problem that the statute was meaning to address if it was a situation in which the – as I understand it, in which the defendants agreed to send out, you know, 50 gazillion coupons, and then the fees were figured as a percentage of the face value of the coupons that were available, but here what actually happened was that you had to jump through hopes to get the coupons, and I'm not sure that that wasn't redemption for purposes of this statute. Well, I am sure that that's not redemption for purposes of the statute because the coupons have not been redeemed, they've just been claimed. Right. And I think redemption means redemption, not claims. Why isn't redemption getting the coupon and having it available when it's not being just sent out for you and you actually have to take steps to do it? I mean, why would somebody go through all that trouble and then not use it? Well, I went through all that trouble and I'm not going to use it because the coupon costs me money because hp.com charges – I'm getting it through. You only went through the trouble so you could challenge it, but otherwise you wouldn't have gone through the trouble. Well, but then that goes to the fairness of the settlement, and tens of millions of class members didn't go through the trouble either. Exactly. But in terms of the fee question, whether you redeemed the coupon, it seems to me you redeemed the coupon. Well, redeemed means submitted it to hp.com and getting your $2 back. I think that that's just the statutory definition. I guess I, unlike Judge Brewer, I am troubled by Section 1712a's language. If you look at the literal language of this, it says, I gather that your take on that is that whatever else Judge Foley may have done with respect to lodestar calculations and the like, that if he didn't do that, that he has violated that statute. Is that correct? That's correct, Your Honor.  Do you think those cases bear in any way on the meaning of this section? I just read the portion of the section. Which particular cases? I'm sorry. Well, I thought you mentioned Bluetooth. Oh, well, Bluetooth was not a coupon settlement. Right. Where Bluetooth comes in is, I think, in terms of the proportionality analysis, that this Court has a 25 percent benchmark. And in Dennis v. Kellogg, decided by this Court September 4th, it said that 37 percent was clearly excessive. And here we have 2.1 million for the attorneys. And if we accept the judge's valuation, which I don't for reasons stated in the brief, of 1.5 million, that's 58 percent. Our Court is fairly liberal in this. And that's the judgment of the Court, that that's the way it goes. But on the other hand, we don't have the authority to overwrite a statute. And that's what I'm concerned about, is whether the language of that statute puts a floor on the conduct of the district judge. Whatever else the district judge may do with respect to a lodestar analysis, if the district judge does not specifically calculate the value of the class members on the coupons that are redeemed, that he may violate the statute. I gather, again, that's your position, right?  Well, on your position ---- Counsel, if I could interject one question. My understanding was that 1712 expressly covers the situation where the judge gives a fee award based in part on coupons and in part on something else. Let's say in part on the hours or the injunctive relief. Now, am I right that the statute in that case calls for the judge to calculate the part relating to coupons on the basis of redeemed coupons? That's correct. That's Section 1712C. But I would note that if we're going to give 1712 meaning for injunctive relief to be a basis to invoke 1712B or 1712C, the injunctive relief has to have some value. Otherwise, any coupon settlement could find a loophole of some trivial injunctive relief requiring the CEO to write something on a chalkboard. Can I ask you, in your reading of the statute, what 17B means? B means that if the court decides to ---- that there's meaningful injunctive relief that benefits injured class members and not prospective relief, but relief that that fixes something that happens. That's C. What does B mean? B is for the court can disregard the coupons entirely and award on the injunctive relief. The language is if it provides for a portion of the recovery of the coupons is not used to determine the injury's fees. That doesn't mean a calculation based on the amount of the coupon. In other words, it seems to me to be talking that A and B seem to be speaking directly about a common fund approach versus a Lodestar approach and say if you're going to do a common fund approach, then you have to do it this way. But if you're not going to do a common fund approach, then you can do it based on the amount of time class counsel recently expended working in the action. And why doesn't it say that? Because under this ---- well, you have to have relief other than coupon relief. Otherwise, there's ---- I don't see where it says that. That's C. C says that. If a proposed settlement provides for an award of coupons to class members and also provides for equitable relief, that's C. So what's B if it's not what I'm saying it is? Well, then the court can base it on Lodestar, but then it would be subject to this the Lodestar crosscheck for the proportionality of the relief. Right, but not to the requirement that it has to be based on the redeemed coupons. If the court is disregarding the coupons entirely, yes. But the court didn't ---- Is that what he was doing here? I disagree. Okay. Yeah, I guess that would be a question that I would have because it ---- I'm quoting here from the record at 30 ER30 and 31, Judge Fogel said, The actual cash value of these non-transferable credits is significantly less than 1.5 million. While no precise value can be placed on the settlement in light of the many uncertainties involved, the court is satisfied that the ultimate value of the settlement to the class is roughly 1.5 million. Now, he didn't say, you know, I'm not going to give any value under A. I'm just going to give it in connection with B, treat it entirely as the injunctive relief. Under the circumstances, does that mean that we have to send it back? Or can we just say, like Judge Fogel, he couldn't put any value on it, therefore he didn't comply with A, therefore he put the entire value on the injunction and that's okay? Can we do that? Well, in Powers v. Eichten, this court refused to do that and said district courts have to explain and give this court something to review. And historically, this court hasn't substituted reasoning. Counsel, I might be missing something here, and maybe I misread what he was saying. But I thought what he was saying was that the way he viewed it, the value of the injunctive relief together came to 1.5 million. Then he thought the coupon relief and the injunctive relief together gave a total value of $1.5 million. That's correct. And he was doing that. He was not doing that as a cross-check on what was calculated as both star fees? Well, he used that to calculate the fee award. He says I'm awarding 1.5 million because I find that the ---- All right. Is there something else you're going to go on? I'll save the rest of my time. Okay. As I understand it, on the next portion, we've got a division of two 7-1⁄2-minute periods. Is that correct? We're starting with Mr. McCarthy. Is that right? That is correct, Justice. Okay. Please. If I could turn my attention to the issue of the fees, that seems to be the focus of the argument. And it's somewhat ironic because typically class counsel are criticized for selling a case early, without much workup, having a big fee, and not getting the class much. This is a case that was worked for five years. Judge Fogle was intimately familiar with the case. There was substantial motion practice. We filed a class cert. We lost. The judge said repeatedly our case was weak. And despite these factors, we believe we got a very fair settlement. On the issue of fees in the Ninth Circuit, the main determinative factor is the result you get for the class. So recognizing that, we went in and applied for only 32 percent of our lodestar because, frankly, we didn't get the result we wanted. But you calculated the lodestar first. Is that right? Correct. And you gave the judge that. Correct. And you said we're only doing 32 percent of it because of Hensley, essentially. Yes. And he said, well, I'm not sure you're going to succeed at that much, so I'm going to Hensley it by looking at the value. But I'm still just doing a lodestar fee. I'm cross-checking it, as I've been told to do, but nothing here was calculated based on any redemption value. That is our understanding, Your Honor. And as a matter of fact, we have to do that. Can he do that? Well, he can do that under B. But does he have to say that that's what he's doing? Because what I'm seeing here is he says the actual cash value of these non-transferable credits, which is the coupon, is significantly less than 1.5 million. While no precise value can be placed on the settlement overall in light of the many uncertainties involved, the Court has satisfied that the ultimate value, blah, blah, blah. In other words, he didn't break it down and say I'm not going to – I can't determine the value of the coupons under A, so I'm not going to value it. I'm just going to go under B and go with the injunction alone. He seems to mix them together, and yet he doesn't place a value on the coupons, which seems to me to raise an issue under A. Is that wrong? I believe that is wrong. Why? Does B say anything about an injunction? Does B – C deals with the injunction. C doesn't deal with an injunction at all. It's just an alternative way to figure out the fees if you have a coupon recovery. Your Honor, first let me point out that the judge specifically cited B in his opinion. So I think that's very fair to say that he was focused on B, and that is in ER 26, page 13 of the order. And what the judge did in doing a lodestar analysis is reduce our fees $800,000 further. He was, you know, certainly every right to do so. And the way we read the statute, to kind of cut to the chase, is that B under the CAFA statute was used for a lodestar analysis. A is used when there's a coupon redemption. And here's why we think the statute reads that way. The safeguard that CAFA was trying to address was when class counsel would come in and say, we have coupons that are worth $500 million. Now we want 25% of $500 million. And the correction is, well, wait a minute, if you're going to come in on a percentage basis, it's going to be a percentage of the redemption. That doesn't mean the trial court doesn't have discretion to use a lodestar approach, which is obviously accepted in the Ninth Circuit, which is how you read B. Okay, well, just following along what you're saying there, if you look at A, it says, if a proposed settlement in a class action provides for recovery of coupons to a class member, the portion of any attorney fees awarded to class counsel that is attributable to coupons shall be based upon the value to class members of the coupons that are redeemed. So it contemplates in A that a portion of the fee can be attributable to the coupons. My trouble here is it looks like Judge Fogel, he couldn't put a value on it, but he clearly considered that the value, the ultimate value to the class of the whole thing, including coupons, which he didn't value, was $1.5 million. Did he violate the statute? No, because we believe he did that calculation as a crosscheck. He valued the entire settlement at $1.5, used that to crosscheck the lodestar, then reduced our lodestar proportionally. But did he comply with A, where he had to say, this is the value of the coupons that are redeemed? If he had said, I give it a value of one cent, he probably would have complied with the statute because he wouldn't have been able to value it in any other way. Or he could have said, I suppose, I don't give it any value. But at least based on my understanding from the transcript, he did not value the redemption of the coupons. And in this case, where you've got such a small, not to criticize good counsel here on all that was done, but the reality is that, as counsel for the opposition said, nobody's going to spend a bunch of money to get, you know, if you get $7 and you can spend $10 or $15 or $20 to get something, nobody's going to redeem them. So even under the handling factors, I don't see how that helps. But I'm still stuck with how do we comply with the statute here? On the first part of your question, no, I don't think that was required to do evaluation on the coupons if you do a lodestar analysis under B. The second part of your question, the redemptions, I would point out that 122,000 individuals have filed 400,000 claims. We have one objective. Say that again. 122,000 individuals have filed 400,000 claims. Four coupons. Correct. The e-credits. Correct. So seeking redemption. I thought I heard you say, Judge Smith, that this is something where no one's ever going to file anything. And I was just wondering. To redeem. To redeem. And that's my question, is not that they got to ask for the coupon, but rather they It means you have a coupon and you take the coupon and you say, I want what this coupon gives to me. That's a redemption. And I believe that is satisfied by filing the claim and going through the procedures Has anybody submitted such a coupon? Well, the case has gone appeal. This gentleman did. I understand that. No. My understanding is that the time for submitting the coupons has not occurred yet. No. Let me be clear. 122,000 individuals have submitted what you're referring to as a coupon. No. Have submitted a request for a coupon. Well, they've been more accurate. They've submitted the claim under the class action orders. They've gotten the right to redeem a coupon, but they haven't actually gotten money yet or a credit because it's not available yet. Because the case is on appeal. Correct. Right. Now, are any of the cases, well, first of all, I mean, this whole issue that we're talking about now was barely mentioned in the briefs. It's kind of neither of you, nobody spent any time on it, and it seems to me to be a substantial question of statutory interpretation. And it was just kind of neither of you said very much about it. But in particular, is there any case law about it anywhere? And in particular, is there any case law on the question of what it means to redeem? Are any of the cases like this in which you didn't just get the coupons? You had to go get them? Yes, Your Honor. And I'm working from memory. I am aware of a decision by Judge Chen in the Northern District. I believe the case's name is Flurry. I'll look up the site when I sit back down. It dealt with a 1712B analysis, and it applied a lodestar fee analysis under there. And I'm happy to look that up when I sit back down and give the full site report. And what about this factor here where the coupons, you had to apply to get the coupons? And whether you have to wait until the case is completely done, I am not aware of a decision on that. Okay. We appreciate your argument. Thank you. I know you all have divided up, so I don't want to deprive your co-counsel of an opportunity to argue here. Thank you. Counsel just handed me that Flurry site. If I could give it to you before I sit down. Okay. Flurry v. Richmont, 208 U.S. District, Lexus, 112-459, Northern District, California, 2008. Thank you. May it please the Court, Sam Liversidge for Hewlett Packard Company. If I could give the Court one more site on this issue, it's actually from a district court case in the Southern District of Florida. It doesn't appear to be an enormous amount of case law on this issue, but the case site is Perez v. Assyrian Corp. And I'll give you the Westlaw site, which is 2007, Westlaw, 259-1180. And it picks up this issue of using a load star to value the attorney's fees in a coupon-based settlement. Does it talk about the code sections that we mentioned, A, B, C, and so on? Yes. It talks about 1712B, as does the Flurry case, and talks about using the load star where the court using the load star methodology where that is the procedure the court used to value the attorney's fees. Have you looked at the legislative history of this? I have not, Your Honor. Counsel, could you help me? Judge Gould has a question. Could you help me on a theory point that I've been confused by? It's this. How can you value the coupons on a redeemed basis if nobody can redeem them until after the settlement's approved? I thought you had a provision in this settlement agreement saying that they couldn't use the coupons until all appeals were done. That's correct. So how do we ever approve a class action based on the value of redeemed coupons if they can't be redeemed before it's approved? I think it's a good question, and I think the reality is that here Judge Fogel did not attempt to use a common fund analysis in valuing the coupons and providing the attorney's fee award. He just did a kind of ballpark. And he said ballpark, it looks like this is what's going to turn out. And ballpark, that's good enough as a crosscheck. He did a crosscheck. He determined the – he looked at the lodestar. He adjusted it based on the value of the settlement. And I think that's very appropriate in light of the precedent in the Ninth Circuit. And the reality is that I think 1712A does not require him to do an analysis of the value of the coupons. What does it mean, then? I think 1712A is looking at a situation where you have a coupon settlement. Let's say you have a million class members and the defendant offers a $25 coupon to each. It does not want the court to take that and say I have a value here of $25 million, therefore I am going to give attorney's fees based on a settlement value of $25. In fact, I mean, there would be an answer to Judge Gould's question in that circumstance because the fee award would essentially be 25 percent. It's not a number. It's 25 percent. And then the question is 25 percent of what? And then you could just hold it back until you knew what the redeemed value was, and you'd say, oh, it's 25 percent of, you know, whatever was actually redeemed. So you wouldn't have to, you could, in that circumstance, approve the settlement up front because you would be approving a percent. You wouldn't be approving a dollar amount. Right. Here, that's not true at all. Here, that is not the case here, and that's not what the court did or what the court attempted to do, and I don't think is required to do under the statute. I do agree that it's a little ambiguous as to how it would play out if the court attempted to do that. I would also agree that in a situation like this where people actually have to apply, have to fill something out, have to, in this case, for two of the cases, had to sign something saying they believed they were injured, I do think it's fair to look at that as analogous to redemption if what you're trying to do is determine how many people are really going to take advantage of this settlement. Well, that may go to the, that may go to how the district court values the redemption because you've got all these barriers. But it doesn't change the fact that unless we're going to render this statute a nullity where you have a mixed settlement and not just a coupon settlement, it talks about the portion of any attorney fees attributable to the coupons. Unless we render that analogous, I don't, I don't know how we deal with Judge Fogle's language here because he clearly included both the coupons and the injunction in his valuation of 1.5 million, but he did not make a specific finding as to what the value of these redeemed coupons would be. Now, Judge Gould raises the interesting question. Since you've got a circular argument here, you can't redeem these until the appeal is done. How can we decide the appeal? Because we don't know how much the redemption value is. But I guess at this point, I'm looking at the process. Did Judge Fogle, who we all admire, terrific judge, smart judge, worked very hard on this, I can tell. But the reality is he arguably did not comply with A. If he didn't comply with A, then what do we do with it? And, Your Honor, I would submit that Judge Fogle is not required to go under 1712A. I don't think the statute obligates him to do that. I don't think he attempted to do that. I think what he attempted to do was look at the lodestar, which he's entitled to do under CAFA, and he attempted to adjust that lodestar in light of the value of the settlement. And he conducted a cross-check. And I think that's what he was supposed to do, and that's what he did. And it would seem unfair to penalize him for having conducted a cross-check to determine the appropriate fee award when he didn't go under 1712A. We wouldn't do that. As a practical matter, I mean, is there any realistic chance that the number's going to change? I mean, let's suppose we sent it back and we said, okay, wait till they redeem the money. And given the fact that he actually knocked you down from or knocked the plaintiffs down from a total – he wasn't even assuming that all of the coupons claimed were going to be redeemed, right, because that would have been more than $1,500,000, as I understand it. How many coupons were actually applied for? There were 120,000 claims. Money-wise, money-wise. Money-wise? I don't have that number in front of me. If I recall, I think it was more than $1,500,000, and then he kicked in something for the injunction, and then he kind of ballparked it. So if we went back and we made him do it all over again, is there any real chance it's going to turn out to be a very different number? I don't think so. Again, Mr. Frank can test this, but people went through the process of signing up for this. At this point, all they have to do is buy something and they can use it. Why would they do that? It would be stupid. I mean, they didn't have to fill out this piece of paper, and most people did. It was more work to fill it out and to apply for it than to use it. And we would then be in a position of having HP having sold all these products where people used the e-credits. And at that point, the settlement has gone through and been implemented, and I suppose we are then in a world of simply evaluating at the back end what the value was for purposes of attorney's fees. But she was trying to do it on an estimated basis, essentially. It's like the Novartis case in the Second Circuit. It's like the Novartis case in the Second Circuit. They settled, a lot of money paid, and the Supreme Court agreed with the Christopher case. Happens all the time. Anyway, bottom line is, you think that A, either that these barriers that are established are the redemption or that Judge Fogel didn't have to do what A seems to expressly require? I think A imposes strict guidelines if he chooses to proceed under that section. Okay. Thank you both very much for your argument. Let's hear rebuttal then. The value of the coupon's claims was $1.46 million, and that's at page 20 and 21 of the record. Let's assume then, so in figuring out what the constructive common fund was, he would have thrown in the fee amount, and he would have thrown in something for the injunction. So he obviously has knocked it down considerably. Yes, but that's still 58 percent, which is too high under Bluetooth. That's too high under data. I agree with Dennis, and I want to emphasize that, that even if you rule that 1712B applies, there's a much more serious flaw in this settlement, and that's all of the Bluetooth problems here. And under Bluetooth, the cross-check has to be proportionate to the class recovery unless you make findings that justify a basis from the departure from the 25 percent benchmark. And in Dennis versus Kellogg, this court said 37 percent was, quote-unquote, clearly excessive. And we have 58 percent here, and it would have been 66 percent if the judge hadn't knocked down the fee. And knocking down the fee, I think, demonstrates, per se, that this settlement is unreasonable under Bluetooth because the defendants were willing to put $2.9 million on the table, and the attorneys aggregated all of that to themselves. And so when the court knocked down that attorney award from $2.9 million to $2.1 million, $800,000 that could have gone to the class instead went to HP. That is an interesting aspect of this. And in Bluetooth, this court said there is no apparent reason to structure a settlement so that the fees revert to the defendants rather than to the class. And indeed, the academic literature that we cite says the reason you do that is to try to protect your fees from scrutiny, so that you can go to the judge and say, oh, go ahead and award us everything because it's just going to go to the defendants anyway. And we submit for the reasons we stated in our brief. But is this the case that wasn't protected from scrutiny? In fact, it was knocked down an enormous amount. That's correct. But why would we apply the per se rule? I mean, Bluetooth, it wasn't knocked down at all in Dennis. But here it was knocked down an enormous amount. The judge certainly did not scrutinize. He scrutinized very closely. And it reverted to the defendant. And that's the kicker problem identified by Bluetooth at 654F3rd at 947. I understand it, but it didn't say it was a per se problem. And it's not a per se. And here we know that the district judge really did pursue it quite carefully. But that's a different issue than the issue I'm talking about. I'm talking about the issue that the defendants were willing to give the class $2.9 million. They put up $2.9 million and said, we'll put this to settle the case and make sure we get all the ---- And another way of looking at it is we know that the district judge is going to award you. We think he's going to award you that amount. And that seems fair to us. So we're not going to get into it beyond that. It's not worth our time to start contesting the fees. Well, that's not what Bluetooth says. The implications are that the district judge is going to award you $2.9 million. And that's the implication. But Bluetooth doesn't say that it's a per se rule. No. They say there's no apparent reason to do that. And certainly the ---- The apparent reason is the obvious reason is because ordinarily it's courts that award fees and that the defendants are not in a position to judge that. And if you go into the court, you're not making an agreement as to fees. They're not saying we're going to pay you this amount. They're saying we're going to pay whatever the judge awards. That's what they're saying. And we agree not to challenge it. And, by the way, we get that money back if the judge decides not to award it. Well, it's not back. It hasn't been given to them in the first place. Well, for the reasons we state, we think it is bad. And Professor Lester Brickman has called it ---- It's not back is what I said. It's not getting back because nothing has been given to them. Very good. Well, thank you for your argument. Thanks to all counsel. We appreciate it. It's always nice to have good lawyers here to argue the points. And this is an interesting and important case in this area. And we appreciate the briefing and your argument today. And we will ---- you will hear from us in due course. Thank you, Your Honor. The session for today is ended.
judges: Gould, Berzon, M. Smith, Cjj